IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Lewis T. Babcock, Judge

Civil Case No. 08-cv-00710-LTB

MICHAEL H. OHLFS,

    Plaintiff,

v.

CHARLES SCHWAB & CO., INC.,

    Defendant.

_____

ORDER
_____

This case is before me on Plaintiff's Motion to Vacate Arbitration Award [Doc # 31] and Defendant's Petition to Confirm Arbitration Award and Enter Judgment [Doc # 40] . After consideration of the motion and all related pleadings, I deny Plaintiff's motion and grant Defendant's motion for the reasons set forth below.

**I.  Background**

The Arbitration Award in question was issued by the Financial Industry Regulatory Authority ("FINRA") on August 9, 2011 in resolution of Plaintiff's claims under the Uniformed Services Employment and Reemployment Rights Act, 38 U.S.C. § 4301, *et seq.,* ("USERRA") which prohibits employment discrimination against military personnel deployed for active duty. Plaintiff had initially sought to have the Court decide these claims, but I ordered the parties to arbitrate Plaintiff's claims pursuant to an arbitration agreement Plaintiff executed when he registered as a securities broker.

Upon submitting his claims to FINRA for resolution, Plaintiff executed a FINRA

Arbitration Submission Agreement that provides that Plaintiff was submitting his claims to arbitration in accordance with FINRA rules and procedures; that he or his counsel had read these rules and procedures; and that Plaintiff agreed to be bound by them. The Submission Agreement further provides that Plaintiff "agree[d] to abide by and perform any award(s) rendered pursuant to this Submission Agreement ... [and] voluntarily consent[ed] to submit to the jurisdiction of any court of competent jurisdiction which may properly enter such judgment."

The arbitration that resulted in the Award took place from January 24, 20011 through January 28, 2011 and from July 25, 2011 through July 29, 2011 for a total of 10 days. The Arbitration Award provides as follows:

> 1. [Plaintiff's] statutory claims are hereby denied and dismissed with prejudice.
>
> 2. [Plaintiff's] first claim alleged that his reemployment in 2003 was in violation of [Section 4312 of USERRA]. [Defendant] made a Motion to Dismiss ...at the end of [Plaintiff's] case in chief. The panel granted [Defendant's] Motion to Dismiss as to this claim.
>
> 3. [Plaintiff's] second claim alleged that his reemployment in 2004 was in violation of [Section 4312 of USERRA]. The Panel unanimously found no liability on the part of [Defendant] at the end of the arbitration hearing.
>
> 4. [Plaintiff's] third claim alleged discrimination ... by failure to promote in violation of [Section 4311 of USERRA]. [Defendant] made a Motion to Dismiss ...at the end of [Plaintiff's] case in chief. The panel granted [Defendant's] Motion to Dismiss as to this claim.
>
> 5. [Plaintiff's] fourth claim alleged discrimination in employment against [Plaintiff] ... for filing a Department of Labor (DOL) complaint. The Panel unanimously found no liability on the part of [Defendant] at the end of the arbitration hearing.
>
> ...
>
> 7. Any claim not specifically referred to is also decided in favor of [Defendant].

      8. Any and all relief not specifically addressed herein, including punitive damages and attorneys' fees, is hereby denied with prejudice.

The Award also ordered Defendant to pay certain fees in connection with the arbitration, which Defendant has done.

Defendant now seeks to confirm the Award pursuant to Section 9 of the Federal Arbitration Act (the "FAA"), 9 U.S.C. Plaintiff seeks to vacate the Award based on his assertions that (1) the FINRA panel exceeded its powers by failing to allow a stenographer to record the arbitration proceedings; (2) the FINRA panel was unfair to Plaintiff and partial to Defendant in many respects; (3) the Award violates the well-established public policy of USERRA; and (4) the FINRA panel manifestly disregarded the law.

## II. Standard of Review

In deciding the motions before me, I must "give extreme deference to the determination of the arbitration panel for the standard of review of arbitral awards is among the narrowest known to law." *Hollern v. Wachovia Secur., Inc.,* 458 F.3d 1169, 1172 (10th Cir. 2006) (*quoting Brown v. Coleman Co.,* 220 F.3d 1180, 1182 (10th Cir. 2000)). "Once an arbitration award is entered, the finality of arbitration weighs heavily in its favor and cannot be upset except under exceptional circumstances." *Id.* (*quoting Ormsbee Dev. Co. v. Grace,* 668 F.2d 1140, 1146-47 (10th Cir. 1982)).

Under Section 10 of the FAA, an arbitration award may be vacated if (1) the award was procured by fraud, corruption, or undue means; (2) there was evident partiality or corruption in the arbitrators; (3) the arbitrators were guilty of misconduct in refusing to postpone the hearing, in refusing to hear evidence, or of any other misbehavior resulting in prejudice to a party; or (4) the arbitrators exceeded their powers or imperfectly executed them. 9 U.S.C. § 10(a)(1) - (4). In

addition, an arbitration award may be vacated for a few judicially created reasons including violations of public policy, manifest disregard of the law, and denial of a fundamentally fair hearing. *Sheldon v. Vermonty,* 269 F.3d 1202, 1206 (10th Cir. 2001). In no event, however, do errors in the arbitration panel's findings of fact, interpretation of the law, or application of the law justify vacating an award. *Hollern*, 458 F.3d at 1172 (citation omitted).

The burden is on the party seeking to vacate an arbitration award to show that one of the limited grounds for doing so exists. *Youngs v. Am. Nutrition, Inc.,* 537 F.3d 1135, 1141 (10th Cir. 2008). "That burden is very great." *Id.*

### III. Analysis

### A. The Panel's Failure to Have a Stenographer Record the Arbitration Proceedings

Plaintiff's counsel asserts that "[p]rior to the commencement of the arbitration, [he] requested, as allowed under FINRA Rule 13606(b), that a stenographer be allowed to record the arbitration trial" and that "the panel denied [this] request even though FINRA's rules do not give the arbitration panel the discretion to do so." In response, Defendant's counsel asserts that no request for a stenographer was ever made to the panel in their presence and that no arbitration order or recording reflects such a request or corresponding denial. Despite the lack of evidentiary support in the record, Plaintiff's counsel maintains that he requested a stenographer and that the panel denied his request. Any denial by the panel of a request for a stenographer would not provide a basis for vacating the award in any event.

Although FINRA Rule 13606(b) provides that any party may make a stenographic record of the hearing at its own expense, it further provides that the tape, digital, or other recording made by the panel is the official recording of the proceeding. By executing the FINRA

Submission Agreement, Plaintiff agreed that he or his counsel had read FINRA's rules and procedures and agreed to be bound by them. Thus, the FINRA recording that has been made available to the parties serves as the official recording of the proceeding even if a stenographic recording had been made. The lack of a stenographic record therefore could not have impacted the Award and cannot impact my review of it. As such, any denial of a request for such a record cannot serve as a basis for vacating the Award.

## B. The Panel's Alleged Unfairness to Plaintiff/ Partiality to Defendants

"[O]nly clear evidence of impropriety ... justifies the denial of summary confirmation of an arbitration award." *Ormsbee Dev. Co., supra,* 668 F.2d at 1147. Further, "evidence of bias or interest of an arbitrator must be direct, definite and capable of demonstration rather than remote, uncertain, or speculative." *Id.*

In addition to the panel's alleged denial of his request that a stenographer record the arbitration proceedings, Plaintiff argues that the panel treated him unfairly and demonstrated partiality to Defendant as demonstrated by (1) two of the panel members' connections to Defendant; (2) the panel's failure to issue a reasoned decision; (3) the panel's decision to allow Defendant a period of six months after Plaintiff presented his case to present its defense; (4) the panel's requirement that only Plaintiff submit a written declaration; (5) the rejection of Plaintiff's claims based on payments Plaintiff received from a client to cover his personal expenses in 2008; (6) the panel's disregard of evidence that Plaintiff was a Grade 57 Senior Investment Specialist before his post-9/11 military service but a Grade 56 Investment Representative afterwards; (7) the panel's "overt and friendly relationship" with Defendant and his counsel; (8) the panel's use of a USERRA treatise favored by Defendant; (9) Defendant's

ability to call two undisclosed witnesses; and (10) ex parte communications between the panel and Defendant's counsel.

I will address each of these allegations separately but then consider their cumulative effect in determining whether Plaintiff has met his burden of demonstrating unfairness or partiality.

### 1. The Connections of Two Panel Members to Defendant

It is undisputed that one panel member disclosed to the parties that her son-in-law worked in Defendant's marketing department and that another disclosed that he had an account with Defendant. It is also undisputed that Plaintiff did not object to these panel members hearing and deciding his claims after these disclosures were made.

Where a party has knowledge of facts suggesting bias or partiality on the part of an arbitrator but fails to object on this basis prior to the entry of an award, several courts have declined to entertain such an objection after entry of the award. *See e.g. Theis Research, Inc. V. Brown & Bain,* 400 F.3d 659, 666 (9th Cir,. 2005); *JCI Commc'ns, Inc. V. Int'l Bhd. of Elec. Workers,* 324 F.3d 42, 52 (1st Cir. 2003); *Delta Mine Holding Co. v. AFC Coal Props., Inc.,* 280 F.3d 815, 821 (8th Cir. 2001). I agree that this approach is sound in that it prevents parties from delaying objections until significant resources have been devoted to arbitrating the merits of the controversy. Plaintiff is therefore precluded from demonstrating unfairness or partiality based on the connections two panel members to Defendant.

### 2. The Panel's Failure to Issue a Reasoned Decision

FINRA Rule 13904(g) provides for an "explained decision" that sets forth the general reasons for a decision but only in the event that all parties jointly request such a decision. The

requisite joint request for an explained decision must be made at least twenty days before the first scheduled hearing date. FINRA Rule 13514(d).

Here, the record is clear that there was never a joint request that the panel issue and explained decision. Thus, the panel's failure to issue such a decision is in accord with FINRA's rules and cannot be viewed as evidence of unfairness or partiality.

### 3. The Six-Month Gap Between the Presentation of Plaintiff's Case and Defendant's Defense

Both parties acknowledge that the arbitration of Plaintiff's claims was originally only scheduled to last 5 days - from January 25 - January 29, 2011. Plaintiff claims he finished presenting his case in approximately 2 & 1/2 days. Defendant counters that Plaintiff actually took 3 & 1/2 days of the initial 5 days allotted to present his case-in-chief and that the remaining 1 & 1/2 days was insufficient time for its defense, testimony by rebuttal witnesses, and closing arguments. Defendant also asserts that the specific dates selected for additional hearing dates was merely a reflection of the availability of all panel members and parties.

Although Plaintiff argues that assertions by Defendant should not be taken at face value based on various other alleged false statements, Plaintiff did not specifically address the substance of Defendant's assertions regarding the arbitration schedule in his reply brief. In particular, Plaintiff did not counter Defendant's assertion that it was the availability of the panel members and parties, including Plaintiff's counsel, that led to the scheduling of additional days six months later. Under these circumstances, Plaintiff has failed to meet his burden of demonstrating unfairness or partiality based on the scheduling of five additional arbitration hearing days in July of 2011.

### 4. The Panel's Requirement of a Written Declaration from Plaintiff

Prior to the arbitration hearing, Plaintiff moved to depose three witnesses while Defendant move to depose Plaintiff. Per written order from the panel, Plaintiff withdrew his motion with respect to two witnesses who would available at the hearing and was granted leave to depose the remaining witness. The Panel denied Defendant's motion to depose Plaintiff on the condition that Plaintiff provide a written declaration. There is no evidence that either party sought to take any other depositions which are generally disfavored in arbitration proceedings in any event, and Plaintiff does not dispute Defendant's assertion that Plaintiff relied on his declaration at the arbitration hearing.

Under these circumstances, Plaintiff has failed to meet his burden of demonstrating unfairness or partiality based on the written declaration he was required to provide to Defendant in lieu of his deposition.

### 5. Payments Received by Plaintiff From a Client in 2008

The arbitration panel considered the totality of evidence presented by both sides over ten days of arbitration hearings yet Plaintiff asks me to look at but a small fraction of this evidence and conclude that the panel was unfair to him and partial to Defendant. Among this evidence is evidence relating to payments Plaintiff received from a client, Mary Millman, in 2008. Plaintiff argues that this evidence had no direct bearing on his claim that Defendant wrongfully failed to re-employ him in 2003 and 2004, and Defendant agrees. As noted by the Defendant, however, this evidence was relevant to Plaintiff's credibility, a significant issue in the case, and damages. Plaintiff therefore cannot meet his burden of demonstrating unfairness or partiality based on the admission of evidence regarding payments he received from Ms. Millman.

### 6. Evidence Regarding Plaintiff's Pre and Post-Military Service Employment Status

Plaintiff argues that the panel disregarded evidence that he went from being a Grade 57 Senior Investment Specialist to being a Grade 56 Investment Representative following his post-9/11 military service. While such evidence is certainly relevant to deciding the merits of Plaintiff's claims, there is no basis for me to conclude that the panel disregarded the same especially in light of no contradictory evidence on the issue of whether Plaintiff was in fact involuntarily demoted. Additionally, while Plaintiff claims the panel refused to allow him to testify about his experience as a Grade 57 Senior Investment Specialist, he provides no supporting transcript from the arbitration hearing.

Finding unfairness or partiality on the basis that the panel disregarded evidence relating to Plaintiff's grade level would require improper speculation on my part. *See Ormsbee Dev. Co., supra,* 668 F.2d at 1147 ("[E]vidence of bias or interest of an arbitrator must be direct, definite and capable of demonstration rather than remote, uncertain, or speculative."). Plaintiff therefore cannot meet his burden of demonstrating unfairness or partiality based on the panel's alleged disregard of this evidence.

### 7. The Panel's Treatment of Defendant and His Counsel

Plaintiff's father declares that during the second week of the arbitration hearing he observed the panel chairperson "engaging in what appeared very cozy conversations and exchanges with the defense lawyers" and that these conversations "involved a bantering and casual joking back and forth one usually encounters with friends." Plaintiff's father further declares that Plaintiff's counsel was rarely part of these exchanges and that the same friendly

9

relationship was not extended to him.

Over the course of ten days of hearings, some friendly exchanges will naturally occur between the arbitrators and counsel for the parties. In any event, arbitrators must strive to treat all parties equally and to avoid any perception of partiality. I am unable to conclude, however, that the panel was in fact partial to Defendant based on one interested person's perceptions of one panel member's interactions with counsel for the opposing party.

### 8. The Panel's Use of a Treatise Favored by Defendant

The citations to the record that Plaintiff provides in support of this argument do not support his characterization of events. Rather, in email correspondence the panel chair noted that Plaintiff's counsel had proposed the submission of two USERRA treatises as well as USERRA's legislative history for use by the panel but that Defendant's counsel objected to one of the treatises. The panel chair further referenced a previous order that "[c]ounsel must agree on any treatises submitted to the arbitrators" and rejected Plaintiff's submission of the objectionable treatise. Thus, it was Plaintiff's counsel who first suggested the USERRA treatise that was accepted by the panel. Moreover, Plaintiff objects to the panel's acceptance of this treatise on the one hand but on the other hand argues that the panel's unfairness or partiality is also demonstrated by the fact that the panel did not seem to refer to the treatise during the arbitration hearing.

Under these circumstances, Plaintiff's argument is disingenuous at best, and no finding of unfairness or partiality can be based on the panels' purported use of a treatise favored by Defendant.

### 9. Hearing Testimony by Undisclosed Witnesses

Both Plaintiff and his father state that Defendant was permitted to call witnesses that had not been disclosed prior to the completion of Plaintiff's case-in-chief over the objection of Plaintiff's counsel. Plaintiff does not identify these witnesses or set forth the nature of their testimony. It is possible that these witnesses testified about the payments Plaintiff received from Ms. Millman, an issue discovered by Defendant after the January arbitration sessions had ended. In any case, Plaintiff cannot rely on such vague allegations to meet his substantial burden of demonstrating unfairness or partiality by the panel.

### 10. Ex Parte Communications Between the Panel and Defense Counsel

Plaintiff's counsel states that he personally observed defense counsel having discussions with panel members out of his earshot. To support his version of events, Plaintiff cited one panel member's statements on the record that he may have appeared rude by ignoring or turning away from people who talked to him outside the course of the proceedings because he wanted to avoid the appearance of impropriety or improper influence. If anything, this statement demonstrates fairness and impartiality on the part of the panel.

In conclusion then, Plaintiff's allegations, viewed both separately and cumulatively, are insufficient to satisfy his burden of demonstrating that the panel was unfair to him or partial to Defendant.

## C. The Public Policy Behind USERRA

An arbitration award may be set aside on public policy grounds if (1) the award creates an explicit conflict with other laws and legal precedents as opposed to general considerations of supposed public interests; and (2) the violation of such public policy is clearly shown. *United*

*Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.,* 484 U.S. 29, 43 (1987).  The authority to vacate an arbitration award on public policy grounds is limited and does not create a broad judicial power to set aside arbitration awards.  *Id.*

Plaintiff argues that the Award clearly violates USERRA's well-defined public policy of protecting members of the armed forces from employment discrimination because it absolves Defendant of any wrongdoing without determining the merits of Plaintiff's claims.  In essence, Plaintiff asks me to infer that the panel did not decide whether Defendant violated USERRA from the lack of an explained decision.  I have already determined that an explained decision was not required in this case under FINRA's rules because the parties did not jointly request such a decision.  Plaintiff's argument that the Award violates public policy is but another attempt to attack the award on this basis.

Furthermore, the case Plaintiff relies on in support of his public policy argument is distinguishable.  In *Stroehmann Bakeries, Inc. v. Local 776, Int'l Bhd. of Teamsters,* 969 F.2d 1436, 1440 (3d. Cir. 1992), the arbitrator reinstated an employee who had been terminated for immoral conduct in sexually harassing a customer's employee on the sole basis that the employer failed to conduct an adequate investigation of the incident before discharging the employee.  The arbitrator expressly refused to find whether the alleged sexual harassment had occurred.  *Id.*  Specifically, in his conclusions, the arbitrator stated:

> First, it is essential at the outset to eliminate what this decision does *not* involve.  It does *not* involve any fine questions of quantum of proof, relative credibility of witnesses, seriousness of charged misconduct, or presence of anti-union animus.
>
> Second, what *is* involved in this case is the absolute insufficiency of Stroehmann's response to the information its management received ....

*Id.* at 1443-44.  Here, there was no such refusal by the panel to consider the merits of the discrimination allegations by Plaintiff.  Instead, "[a]fter considering the pleadings, the testimony, and evidence presented at the hearing," the panel granted Defendant's motion to dismiss as to two of Plaintiff's claims and unanimously found no liability on the part of Defendant on Plaintiff's other two claims.  The panel necessarily had to consider the merits of Plaintiff's USERRA claims to have reached this result.  Thus, Plaintiff has not clearly shown a violation of the public policy behind USERRA.

### D.  The Panel's Alleged Disregard of the Law

In order to vacate abn arbitration award based on the arbitrators' manifest disregard of the law, "the record [must] show the arbitrator[s] knew the law and explicitly disregarded it." *Dominion Video Satellite, Inc. v. Echostar Satellite, L.L.C.,* 430 F.3d 1269, 1275 (10th Cir. 2005).  This exacting standard requires more than an erroneous interpretation or application of the law.  *Id.  See also Hollern,* 458 F.3d at 1172 ("Errors in an arbitration panel's factual findings, or its interpretation and application of the law, do not justify vacating an award.").

Plaintiff concedes that he does not know the basis for the panel's decision yet argues that the panel manifestly disregarded the law governing his USERRA claims to the extent that it (1) found no USERRA violation by Defendant despite evidence that Plaintiff was demoted from a Grade 57 position to a Grade 56 position following his military service; (2) granted Defendant's motion to dismiss based on the statute of limitations; (3) accepted Defendant's argument that Plaintiff waived his rights under USERRA; and (4) taxed costs against Plaintiff.

In the absence of an explanation for the Award, Plaintiff cannot demonstrate that the panel manifestly disregarded the law under USERRA based on the fact that it found for

Defendant on his claims. *See O.R. Sec., Inc. v. Prof'l Planning Assocs., Inc.,* 857 F.2d 742, 747 (11th Cir. 1988) ("...when the arbitrators do not give their reasons, it is nearly impossible for the court to determine whether they acted in disregard of the law."); *Advest, Inc. V. McCarthy,* 914 F.2d 6, 10 (1st Cir. 1990) (where arbitrators were not required to explain award and did not do so, "it [was] no wonder that appellant [was] hard pressed to satisfy the exacting standard for invocation of the doctrine [of manifest disregard o the law]."). Defendant presented substantial evidence in defense of Plaintiff's claims, and I cannot second guess the panel's factual findings as I would have to do in order to conclude that the panel's decision was based on a misapplication or misinterpretation of the law let alone the requisite manifest disregard of the law. Certainly, the Award provides no basis to find an "explicit" disregard of the law by the panel in finding in favor of Defendant on Plaintiff's claims.

The taxing of costs against Plaintiff does not require the same analysis of the merits of Plaintiff's claims. However, this part of the Award likewise fails to demonstrate a manifest disregard of the law by the panel. The Award references an $1,800 initial claim filing fee consisting of a non-refundable and a refundable portion and orders Defendant to reimburse Plaintiff for the $600 non-refundable portion. It is clear then that the remaining $1,200 is refundable, and no finding of a manifest disregard of the law can be made on the basis that this amount was purportedly taxed to Plaintiff.

### IV. Conclusion

For the reasons set forth above, IT IS HEREBY ORDERED that:

1. Plaintiff's Motion to Vacate Arbitration Award [Doc # 31] is DENIED;

2. Defendant's Petition to Confirm Arbitration Award and Enter Judgment [Doc # 40] is GRANTED;

3. Judgment shall enter in favor of Defendant and against Plaintiff as set forth in the Arbitration Award dated August 9, 2011; and

4. Plaintiff's claims are dismissed WITH PREJUDICE.

Dated: January   24   , 2012 in Denver, Colorado.

                          BY THE COURT:

                             s/Lewis T. Babcock
                          LEWIS T. BABCOCK, JUDGE